<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CROCS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> DR. LEONARD'S HEALTHCARE CORP. D/B/A CAROL WRIGHT, STAR BAY GROUP INC., 718CLOSEOUTS, ROYAL DELUXE ACCESSORIES, LLC, and FUJIAN HUAYUAN WELL IMPORT AND EXPORT TRADE CO., LTD., <br><br> *Defendants*. | Civil No.: 21-cv-13583 (KSH) (MAH) <br><br><br> <u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Plaintiff Crocs, Inc. ("Crocs"), a company known for its foam clog footwear, initiated this action against defendant Star Bay Group Inc. ("Star Bay")[1] for the alleged unlawful importation, promotion, distribution, and sale of knockoff clogs. Star Bay did not answer the complaint or otherwise respond in this matter, and Crocs has now moved (D.E. 21) for entry of a permanent injunction and final judgment by default pursuant to Fed. R. Civ. P. 55(b)(2). For the reasons that follow, Crocs's motion is granted.

**II.     Background**

The facts are gleaned from the complaint. (D.E. 1, Compl.) Crocs is a self-described "institution in the footwear industry" that makes shoes in hundreds of forms and color patterns. (*Id.* ¶¶ 47-48.) The company is widely known for its flagship shoe—the "classic clog"—which

---

[1] Crocs also asserted claims against four other defendants who have since been dismissed from this action. (*See* D.E. 6, 8, 15, 17.)

features Crocs's trademarks. (*Id.* ¶ 48.) Those trademarks, referred to in the complaint as "the 3D Marks," include: (i) two registered trademarks for the iconic Crocs design; and (ii) a common law trademark for the "vamp"[2] of the shoe. (*Id.* ¶¶ 16, 31, Exs. 1, 2.) Through social media campaigns and unconventional collaborations with various brands, celebrities, and artists, the 3D Marks have received extensive media attention and generated substantial revenue. (*Id.* ¶¶ 24, 26-30.) Accordingly, Crocs devotes significant time and resources to protect against their infringement. (*Id.* ¶¶ 50-52.)

Defendant Star Bay, a self-described "professional footwear importer [and] exporter," sells "Men's Garden Shoes" and other footwear that allegedly infringe on the 3D Marks.[3] (*Id.* ¶¶ 72, 74-75.) Crocs alleges that the infringing products—which are sold at a reduced price point on Star Bay's website and at its brick-and-mortar warehouse in New Jersey—are likely to cause consumer confusion and dilution due to the "overwhelming similarities" between them and the 3D Marks. (*Id.* ¶¶ 83-84, 86-88.)

On July 12, 2021, Crocs filed its complaint against Star Bay asserting claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), for trademark infringement, trademark dilution, and false designation of origin/unfair competition, as well as New Jersey statutory and common

---

[2] The complaint references certain terms of art but does not define them. For context, the Court provides dictionary definitions.

A "vamp" is "the part of a shoe upper . . . covering especially the forepart of the foot and sometimes also extending forward over the toe or backward to the back seam of the upper." Merriam-Webster, *Definition of vamp*, https://www.merriam-webster.com/dictionary/vamp (last visited Aug. 30, 2022). An "upper" is "the parts of a shoe . . . above the sole." Merriam-Webster, *Definition of upper*, https://www.merriam-webster.com/dictionary/upper (last visited Aug. 30, 2022).

[3] The complaint does not specifically allege which other Star Bay styles infringe on the 3D Marks. (*See id.* ¶ 75 ("On information and belief, Star Bay has promoted and sold additional shoe models bearing the 3D Marks under various names and style descriptions.").

law claims for trademark infringement and unfair competition. (D.E. 1.) Although Star Bay was served with the summons and complaint on July 29, 2021, it failed to answer or otherwise respond. (D.E. 11.) Accordingly, the clerk entered default against it on January 12, 2022. (*See* D.E. 13.)

Crocs now moves (D.E. 21) for entry of a permanent injunction and final judgment by default pursuant to Fed. R. Civ. P. 55(b)(2). In its motion, Crocs seeks: (i) to enjoin Star Bay from manufacturing, selling, distributing, promoting, or otherwise engaging in commerce with respect to any goods that infringe on the 3D Marks; (ii) Lanham Act damages; and (iii) reasonable attorneys' fees and costs. (*See* D.E. 21-5.)

## III. Discussion

### A. Legal Standard

The Court may enter default judgment against a properly served defendant who does not file a timely responsive pleading. *See* Fed. R. Civ. P. 55(b)(2). "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). That "discretion is not without limits," however, and it is preferred that "cases be disposed of on the merits whenever practicable." *Id.* at 1181. Accordingly, before entering default judgment, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Louisiana Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (Kugler, J.) (internal citations and quotations omitted). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly

served. *See Baymont Franchise Sys., Inc. v. Shree Hanuman, Inc.*, 2015 WL 1472334, at *2, 3 (D.N.J. Mar. 30, 2015) (McNulty, J.).

Once the Court is satisfied as a threshold matter that it has jurisdiction over the suit and that the plaintiff has pled a legitimate cause of action, it must then "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### B. Default Judgment Analysis

#### a. Threshold Requirements

The Court is satisfied that Crocs has met the threshold requirements for entry of default judgment against Star Bay.

First, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 because the complaint asserts federal trademark claims (Compl. ¶¶ 108-130), and related state law claims over which the Court may exercise supplemental jurisdiction (*id.* ¶¶ 131-53). The Court also has personal jurisdiction over Star Bay because it is a New Jersey corporation with its principal place of business in the state.[4] (*Id.* ¶ 3.) *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.");

---

[4] Because the jurisdictional allegations are alleged on information and belief, the Court acknowledges that Star Bay's website lists an address in Hackensack, New Jersey, *see* Star Bay, *Home*, https://starbaygroup.com/w2/footwear/index.php (last visited Aug. 30, 2022), and that Star Bay is a registered corporation in the state, *see* State of New Jersey, *Business Name Search*, https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName (last visited Aug. 30, 2022).

*see also Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, 2021 WL 1541054, at *3 (D.N.J. Apr. 20, 2021) (Vazquez, J.) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." (internal citations and quotations omitted)).

Additionally, Crocs has provided the Court with a certificate of service which demonstrates that Star Bay was served personally and via first class mail at its principal place of business in Hackensack, New Jersey. (D.E. 11.) Because Fed. R. Civ. P. 4(h)(1)(B) authorizes personal service on a corporation, the Court is satisfied that Star Bay was properly served.[5]

### b. Legitimate Cause of Action

Having determined that Crocs has met the threshold requirements for entry of default judgment, the Court turns to the legitimacy of Crocs's claims for false designation of origin/unfair competition, trademark infringement, and trademark dilution.

Turning first to the false designation of origin/unfair competition and trademark infringement causes of action, Crocs has asserted claims under the Lanham Act as well as New Jersey statutory and common law, all of which require the same analysis. *See Cancer Genetics, Inc. v. Hartmayer*, 2008 WL 323738, at *9 (D.N.J. Feb. 5, 2008) (Hochberg, J.) ("Because the elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law, the Court's [Lanham Act analysis] extends to Plaintiff's state law claims as well." (quoting *Buying*

---

[5] Service was also proper under Fed. R. Civ. P. 4(h)(1)(A) and (e)(1), which authorize service on a corporation in a manner consistent with the law of the state where the district court is located or where service is made. The certificate of service in the record indicates that service was effectuated on "a Person in charge" of Star Bay's principal place of business in Hackensack, New Jersey (*see* D.E. 11 at 1), and N.J. Rule 4:4-4(a)(6) allows for service "on a person at the principal place of business of the corporation . . . in charge thereof."

*For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) (Pisano, J.))). To state a cause of action, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)).

Here, Crocs alleges that it owns the 3D Marks and attaches certified copies of the United States Patent and Trademark Office registrations to its complaint (*see* Compl. ¶¶ 16, 31, Exs. 1, 2), which serve as *prima facie* evidence of validity and ownership. *See Coach, Inc. v. Cosm. House*, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011) (Walls. J.) ("A certificate of registration issued by the United States Patent and Trademark Office constitutes *prima facie* evidence of the validity and ownership of a disputed mark."). It further alleges that Star Bay's product has "close similarities" to the 3D Marks—specifically, similarities in (i) the size, positioning, number, and shape of the holes on the horizontal portion of the upper; and (ii) the inclusion of a textured strip along the vertical portion of the upper with trapezoidal openings, as well as a textured strip on the heel with a decorative band along its length—which are supported by a visual, side-by-side representation of the products. (Compl. ¶¶ 81-82, 86-88.) These allegations are sufficient to establish a likelihood of consumer confusion. *See E.A. Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (McNulty, J.) (likelihood of confusion satisfied if plaintiffs allege similarities between products that could cause consumers to "conclude that [they] share a common source, affiliation, connection, or sponsorship" (internal citations and quotations omitted)); *see also Sweet People Apparel, Inc. v. Fame of N.Y., Inc.*,

6

2011 WL 2937360, at *3 (D.N.J. July 19, 2011) (Chesler, J.) (likelihood of confusion existed where infringing designs were "virtually identical").

To plead a trademark dilution claim, the plaintiff must allege that: (1) it is the owner of a "famous" mark; (2) the defendant "is making commercial use in interstate commerce" of the mark; (3) the defendant's use began after the mark became "famous"; and (4) the defendant's use "causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." *Times Mirror Mags., Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000). Here, Crocs alleges that the 3D Marks (i) have a "distinctively quirky" design for which it is well-known worldwide (Compl. ¶¶ 32, 127); (ii) are sold through a vast network of retailers and distribution channels in over 90 countries (*id.* ¶ 20); and (iii) have been the subject of substantial media attention and other publicity (*id.* ¶¶ 27-30), which collectively establish that the 3D Marks are "famous." It further alleges that Star Bay has made commercial use of the 3D Marks by selling infringing products on its website (*id.* ¶¶ 73, 83), and that it began doing so after they became famous (*id.* ¶ 79). Finally, Crocs alleges that by using the 3D Marks, Star Bay is causing consumers to confuse the legitimate product with its knockoffs. (Compl. ¶¶ 86-88.) These facts are sufficient to establish a *prima facie* trademark dilution claim. *See Audi AG v. Posh Clothing, LLC*, 2019 WL 1951166, at *4 (D.N.J. May 2, 2019) (Vazquez, J.) (granting default judgment on trademark dilution claim where plaintiffs alleged that defendants "offer[ed] for sale goods with [famous] marks via the Internet" and did so after the marks became famous, which "lessen[ed] consumers' ability to distinguish between the real and counterfeit items").

      c. ***Emcasco* Factors**

Having determined that Crocs has alleged legitimate causes of action, the Court must weigh: (i) the existence of a meritorious defense; (ii) the prejudice that Crocs will suffer if default judgment is not entered; and (iii) Star Bay's culpability in the default. *See Emcasco*, 834 F.2d at 74.

Here, all three factors weigh in favor of entering default judgment. First, by failing to answer the complaint or otherwise respond in this action, Star Bay has "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (Salas, J.); *accord Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Dubin Paper Co.*, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (Simandle, J.) (granting default judgment where court's review of the record did not "indicate[] any possible defenses").

Second, Star Bay's failure to answer has already prevented Crocs from "prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (Simandle, J.). Crocs will continue to "suffer prejudice if the Court does not enter default judgment as [it] has no other means of seeking damages for the harm allegedly caused by [Star Bay]." *Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (Linares, J.).

Finally, there is nothing in the record "to suggest that anything other than [Star Bay's] willful negligence caused [its] failure to file an answer." *Prudential Ins. Co. of Am. v. Taylor*, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (Arleo, M.J.). Accordingly, Star Bay's "failure

to answer, without providing any reasonable explanation, permits the [C]ourt to draw an inference of culpability." *Audi AG*, 2019 WL 1951166, at *7.

### C. Remedies

Having determined that entry of default judgment is appropriate, the Court next assesses the remedies sought by Crocs.

#### a. Injunctive Relief

Crocs seeks a permanent injunction enjoining Star Bay from "manufacturing, selling, distributing, promoting, or otherwise engaging in commerce with respect to any goods that infringe Crocs's trademarks." (D.E. 21-5 ¶ 3.) To obtain a permanent injunction, a plaintiff must demonstrate that: (1) it suffered "irreparable injury"; (2) remedies available at law, such as monetary damages, are inadequate to compensate; (3) an equitable remedy is warranted considering the balance of hardships between the parties; and (4) entry of an injunction is in the public interest. *Audi AG*, 2019 WL 1951166, at *5 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Those factors are easily satisfied here. First, "trademark infringement amounts to irreparable injury as a matter of law." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992); *see Mister Softee, Inc. v. Amanollahi*, 2014 WL 3110000, at *14 (D.N.J. July 1, 2014) (McNulty, J.) (irreparable injury would result if defendant "continue[d] to use (or contributorily infringe)" plaintiff's marks). Second, Star Bay's infringement is allegedly damaging Crocs's reputation and good will (*see* Compl. ¶¶ 128-29), and thus monetary relief would "not compensate for [that] injury . . . or necessarily prevent future trademark infringement." *Coach, Inc. v. Bags & Accessories*, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (Simandle, J.). Third, because Star Bay's shoes are counterfeit, "any harm to [it] is self-

9

inflicted," and does not outweigh the legitimate harm to Crocs's reputation and good will. *Audi AG*, 2019 WL 1951166, at *5. Finally, a permanent injunction is in the public interest because it will alleviate the consumer confusion described in Section III(B)(b), *supra*. *See S & R Corp.*, 968 F.2d at 379 ("In a trademark case, the public interest is most often a synonym for the right of the public not to be deceived or confused." (internal citations and quotations omitted)).

### b. Lanham Act Damages

Crocs next seeks statutory damages under the Lanham Act, which "are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *Delta Air Lines, Inc. v. Fly Tech, LLC*, 2018 WL 1535231, at *3 (D.N.J. Mar. 29, 2018) (Arleo, J.) (internal citations and quotations omitted). Section 1117(c) of the Lanham Act provides as follows:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits . . . , an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).

While Section 1117 sets minimum and maximum damages, it "does not provide guidelines for courts to use in determining an appropriate award." *Delta Air Lines*, 2018 WL 1535231, at *3 (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583

(E.D. Pa. 2002)).  Accordingly, courts often consider the following factors—adopted from copyright infringement cases—when fixing a damages award:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [mark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id.* at *3-4 (quoting *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009) (Hillman, J.)).  Because Star Bay's default "prevents the Court from making specific findings on the factors that require review of data in [Star Bay's] possession," *JUUL Labs, Inc. v. Zoey Trading LLC*, 2022 WL 970412, at *7 (D.N.J. Mar. 31, 2022) (Neals, J.), it will focus solely on: (i) the value of the 3D Marks; (ii) the deterrent effect on Star Bay and other infringers; and (iii) the willfulness of Star Bay's conduct.

Here, the complaint alleges that the 3D Marks are valuable and generate substantial revenue for the company.  (Compl. ¶¶ 16, 26.)  It further alleges that Crocs suffers from widespread infringement of the 3D Marks around the world, thereby demonstrating a legitimate need to deter Star Bay and others from engaging in infringing conduct.  (*Id.* ¶¶ 50-52.)  Finally, the "overwhelming similarities" between Star Bay's product and the 3D Marks as alleged in the complaint suggest that Star Bay infringed on the 3D Marks intentionally and willfully.  (*Id.* ¶¶ 81-82.)  Those allegations, coupled with Star Bay's failure to participate in these proceedings despite having been served with copies of both the complaint and the instant motion (*see* D.E. 11, 22), are sufficient to establish willfulness.  *See SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999) (a finding of willfulness requires that the defendant acted with "an aura of indifference to plaintiff's rights or a deliberate[] and unnecessary[y] duplicating

11

[of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured" (internal citations and quotations omitted)).

With those findings in mind, the Court turns to Crocs's award request of $60,000, which is comprised of $30,000 for each registered mark.[6] It justifies the amount on grounds that it is the same as the award issued by Judge Simandle in *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678 (D.N.J. 2015), reasoning that there is "simply no formula to tailor an award amount to actual losses." (Mov. Br. at 14.) *See Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) (Simandle, J.) (courts "may be guided by past statutory damage awards" when fixing an award under the Lanham Act). In *Chanel*, Judge Simandle recognized that two factors overwhelmingly motivate statutory damages awards: (i) the point of sale of the infringing goods—with cases involving internet distribution resulting in "high damage awards due in part to the wide market exposure that the internet can provide"; and (ii) the monetary value of the item counterfeited. 133 F. Supp. 3d at 688 (quoting *Ocean Point Gifts*, 2010 WL 2521444, at *6). Because the case involved the sale of counterfeit "luxury" items (*i.e.*, knockoff Chanel shirts and pants) on the internet, Judge Simandle awarded $30,000 per infringement totaling $180,000.

The Court agrees with Crocs that *Chanel* provides helpful guideposts for setting a damages award here, as the complaint alleges that: (i) Crocs sells highly distinctive footwear bearing the 3D Marks, which have generated substantial income (*see* Compl. ¶¶ 26, 32, 127); and

---

[6] Crocs does not seek statutory damages for Star Bay's infringement of its common law "vamp" trademark, reasoning that the Lanham Act only allows direct recovery for infringement or dilution of registered marks. *See* 15 U.S.C. § 1116(d)(1)(B)(i) (defining "counterfeit mark" as a "counterfeit of a mark that is registered"). However, it asks the Court to weigh "Star Bay's infringement and dilution of the common law [mark] as an equitable factor supporting the requested award amount." (D.E. 21-1, Mov. Br. at 13, n. 6.)

(ii) Star Bay sold knockoff clogs that infringe on the 3D Marks at least in part via its website (*see id.* ¶¶ 73, 83). Accordingly, the Court will award Crocs damages in the amount sought—$30,000 per infringed registered mark, for a total of $60,000. This amount reflects Star Bay's culpability and the high value of the 3D Marks (including the vamp mark), and will serve as an appropriate deterrent for both Star Bay and other infringing parties.

### c. Attorneys' Fees and Costs

Finally, Crocs seeks reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117, which allows for attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Audi AG*, 2019 WL 1951166, at *7 (quoting *Louis Vuitton Malletier*, 211 F. Supp. 2d at 585). As explained in Section III(C)(b), *supra*, the Court finds that Star Bay's conduct was both willful and deliberate. Accordingly, the Court grants Crocs's request to file an affidavit within 30 days outlining its attorneys' fees and costs in compliance with L. Civ. R. 54.2.

## IV.   Conclusion

For the foregoing reasons, Crocs's motion (D.E. 21) is granted. An appropriate order and judgment will follow.

Date: August 30, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.